JOSEPH CHANDLER *vs*. VINAL B. WILSON.

Aroostook.   Opinion January 26, 1885.

*R. S., c. 5, § 5.   Deeds from commonwealth of Massachusetts.   Office copies.*
*Identity of party named in a deed.   Massachusetts resolve, 1828, giving*
*land to revolutionarg soldiers.   Tax title from State.   Title by*
*prescription to wild lands.*

By R. S., c. 5, § 5, copies of deeds from the commonwealth of Massachusetts, of land in Maine, may be certified by the land agent of Maine to the registry of deeds where the land is situated, and certified copies from such registry may be used in evidence whenever the original deeds could be.

The demandant claims land in Aroostook |county under Samuel Cook, late of Houlton, deceased.   Massachusetts conveyed the land to Samuel Cook, the deed not naming his place of residence.   But she conveyed other land in the same township to Samuel Cook, of Houlton; the defendant does not claim under any Samuel Cook.   *Held*, These facts *prima facie* establish the identity of Samuel Cook of Houlton, as the grantee in the first named deed.

The resolve of Massachusetts, passed in 1828, which granted lots of land in Maine to revolutionary soldiers, " and to their heirs and assigns," should be construed, in the light of previous legislation, not as passing a fee to such soldiers upon their receiving certificates of lots drawn by them, but as contemplating a deed to be given to the soldier if alive, to his heirs if he was dead, and to his assignee if his certificate had been assigned by him.

A deed was made in 1837 by George W. Coffin, land agent of the commonwealth, to Samuel Cook as assignee of a soldier's certificate; the only evidence of the assignment to Cook, is the recital of the fact in Coffin's deed.   As against the defendant, who claims neither under the soldier nor the commonwealth, the recital is *prima facie* proof of the fact recited.

Where land is forfeited to the State for the non-payment of taxes assessed upon it, and the State fails to convey the title to a purchaser for the reason of illegality in its proceedings of sale, the original owner has a better claim of title to the land than the purchaser has, and he may maintain an action against the purchaser therefor.

A person having for over twenty years a recorded deed of a township of mainly wild land, during the time lumbering on some portions of it and cultivating other portions, does not thereby divest the true owner of his title of certain lots within the township, such lots not having been occupied during that period of time.

A person who obtains the title of three of the five heirs of an owner of land, deceased, can recover only three undivided fifths of the land of a person in possession, although the latter person does not occupy under the other heirs; the demandant has no seizin of more than three-fifths of the land.

ON REPORT.

Writ of entry to recover possession of lots fifty-eight and fifty-nine in Mars Hill. The opinion states the facts.

*Powers and Powers*, for the plaintiff, cited: *Ward* v. *Bartholomew*, 23 Mass. 414; *Sargent* v. *Simpson*, 8 Maine, 148; *Blaisdell* v. *Morse*, 75 Maine, 542; *Clark* v. *Pratt*, 47 Maine, 55; Abbott's Trial Ev. 101; *Hatcher* v. *Rochelcau*, 18 N. Y. 86; *Tolman* v. *Hobbs*, 68 Maine, 316; *Elwell* v. *Shaw*, 1 Maine, 339; *Hodgdon* v. *Burleigh*, Law Rep. Nov. 16, 1880; *Hodgdon* v. *Wight*, 36 Maine, 338.

*Wilson and Spear*, and *John P. Donworth*, for the defendant.

The demandant must recover on the strength of his own title and not on the weakness of that of the defendant. *Chaplin* v. *Barker*, 53 Maine, 275; *Poor* v. *Larrabee*, 58 Maine, 554.

The copies of the deeds of the land agent of Massachusetts were not admissible in evidence because the certificate of the land agent here was not in compliance with the law of 1883, c. 125 (R. S., c. 5, § 5), which authorized the record in the registry of deeds of such certified copy. The law requires the certificate to the fact that it is a true copy of the record,— the certificate in fact is that the paper is a true copy of a deed recorded in his office. He does not send a true copy of his record. The record might contain additional statements. It might disclose evidence of alterations or other circumstances affecting the validity of the deed. 15 Maine, 147; 22 Maine, 230; 60 Maine, 250; *Hammatt* v. *Emerson*, 27 Maine, 308.

There is no evidence that Samuel Cook was the father of plaintiff's grantors. The burden is upon the plaintiff to prove the identity. Amos P. Cook, one of the grantors, testified that he "did not take any stock in it;" " That he did not know that his father owned any land." Houlton was only twenty-six miles distance from the land and yet plaintiff could prove no acts showing possession or ownership from 1837 to date of his deed in 1881. Samuel Cook died in 1861,— more than twenty years before this action was brought. The right of entry of the Cook heirs commenced at his death; that right was lost by lapse of time. R. S., c. 105, § § 3, 5; 57 Maine, 343.

The deed of the agent of Massachusetts to Cook conveyed nothing because the land passed to the soldiers by the original resolve of March 5, 1801. The intention of the legislature is clear. The language used is, "Resolved that there be and *hereby is* granted to each non-commissioned officer and soldier," &c. There is no provision for any further conveyance. The terms of the resolve were, sufficient to convey the fee. *Sargent* v. *Simpson*, 8 Maine, 148; *Mayo* v. *Libby*, 12 Mass. 339; *Cary* v. *Whitney*, 48 Maine, 526; 8 Met. 584; 16 Mass. 497; 16 Maine, 343; 3 Wash. Real. Prop. 190, 191, 192.

The resolve of 1828 released the soldiers of their settling duties and confirmed them in their title, and nothing but a deed from them or their heirs could give title to the demandant. He must show title and seizin. *Hunter* v. *Heath*, 67 Maine, 507; *Chaplin* v. *Barker*, 53 Maine, 275.

Counsel further contended that the land was forfeited to the State for taxes, citing *Adams* v. *Larrabee*, 46 Maine, 516.

PETERS, C. J. The demandant, to prove his title to lots fifty-eight and fifty-nine in the town of Mars Hill, produces a deed of quitclaim to himself, dated in 1881, of the lots from three of the five heirs of Samuel Cook, who deceased in 1861. He also produces from the office of the land agent in this state certified copies of deeds'of those lots from George W. Coffin, agent of the commonwealth of Massachusetts, to Samuel Cook, dated in 1837.

Several objections to this title are presented by the defendant :

1. That the land agent's certificate from the office in Maine is not within the provision authorizing the use of copies of Massachusetts deeds in the courts of this state. It seems to us that it falls clearly within the statutory limit. R. S., c. 5, § 5. No objection is made of a want of record in Aroostook county where the land lies.

2. The form of the certificate is objected to, in that it does not certify that the deed is a true copy of the record, as required. The land agent says as much, however, and virtually the same

thing, when he says the copy is a true copy of a deed recorded in his office.

3. The defendant denies that there is evidence that Samuel Cook, father of plaintiff's grantors, is the Samuel Cook to whom the commonwealth conveyed. We are satisfied that this issue should be decided for the plaintiff. Samuel Cook, under whom plaintiff claims, lived in Houlton. The commonwealth's deeds of 1837 did not describe him as a resident of any place. But another deed from the same grantors to Samuel Cook, given in 1836, of another lot in the same township, does describe him as of Houlton. There is no suggestion that any other Samuel Cook ever lived there. The defendant does not himself claim under any Samuel Cook. This Samuel Cook had in his possession a plan of the town, with some marks of his own upon it. The defendant urges upon our attention that Samuel Cook of Houlton, never took possession of the land or attempted to. But no person of the name ever occupied the lots. This man was for a time, longer or shorter, in California, and there is an intimation that he was not always sane.

4. The point evidently most relied on by the counsel for the defendant is that the deeds from Coffin, as land agent, were not authorized by any law. The deeds run to Cook as assignee of certain revolutionary soldiers who had received certificates for lots of land from the commonwealth. The question involves a construction of a resolve of that state passed in 1828. The plaintiff contends that that act contemplated a deed to be given to an assignee of a certificate; the defendant denies it. The defendant further contends that the resolve, *proprio vigore*, carried the title to the soldier, making no provision for any assignee. The resolve is this:

"*Resolved:* That there be, and hereby is, granted to each non-commissioned officer and soldier who enlisted into the American army to serve during the Revolutionary war with Great Britain, and who was returned as a part of this state's quota of said army, and who did actually serve in said army the full term of three years, and who was honorably discharged, and to their heirs and assigns, two hundred acres of land, to be held in fee simple from

the date hereof; those who have heretofore drawn lots to retain the lots they have severally drawn, and those who have not yet drawn lots are hereby permitted to draw the same from the undrawn lots remaining in said Mars Hill township, any time within five years from the date hereof, any provisions or conditions in the former resolves on this subject to the contrary, notwithstanding."

Our opinion is, that the act, when examined in the light of previous legislation and the attendant facts, is correctly construed by the plaintiff. The question turns on the meaning of the words, "and to their heirs and assigns." The plaintiff's construction is that the words mean, "or to their heirs or assigns;" the word assigns meaning assignees. The defendant contends that the words are descriptive of the amount of estate to be conveyed,—descriptive of a fee—and that, the certificates of these lots having been previous to that time issued, the title went directly to the soldiers and could not be afterwards conveyed by the commonwealth to an assignee.

The literal reading is the principal argument for the defendant, and of course there is force in it. But there are several considerations that make strongly the other way. The report of the committee that reported the resolve is furnished us. It speaks of "soldiers or the heirs and *representatives* of soldiers" as the petitioners for the resolve. Again, it speaks of the petitioners as "the above named persons, or *those they represent.*" It also speaks of the "advanced age of many of the soldiers at the end of the war." The use of the phrase, "and 'to' their heirs and assigns," instead of the phrase with the word "to" omitted therefrom is a small indication worth throwing into the scales. Further, if the words are used to express a fee, why were the words, "to be held in fee simple" afterwards unnecessarily added. It is an uncommon thing to find the words, "to his heirs and assigns," inserted in a resolve,— an argument that heirs and assignees, as well as soldiers, were intended.

Confirmation of this view is obtained by an examination of the "former resolves" alluded to in this resolve. This resolve grew out of those. The resolve of 1801 gave two hundred acres (or

$20 money) "to each non-commissioned officer and soldier. . . and unto the children, if any there be, if not, to the widow of such." Another resolve provides that, if the officer or soldier had deceased or shall decease before he obtains his pension in land, "his children or widow as aforesaid shall be entitled to the same." The resolve of 1804 continues that of 1801, and speaks of "the children or widow" of soldiers. The resolve of 1820 appoints George W. Coffin, an agent, to make conveyances for the commonwealth. The certificates assigned to Cook were issued by the secretary of the commonwealth in 1806.

It may be observed that, if the resolve of 1828 made provision for the soldier only, the heirs were neglected in instances where the soldier was deceased. And in 1828, very many of the soldiers of the revolution were not living. It would seem that Mr. Coffin interpreted the resolve as allowing him to convey to an assignee of a soldier's claim, and he made many such conveyances. In *Sargent* v. *Simpson*, 8 Maine, 148, a Massachusetts resolve of 1804, authorizing a release of land to a person or persons, "and to his or their heirs and assigns," was construed as properly reading, "*or* to his or their heirs and assigns;" an authority bearing strongly upon the question in the case before us.

5. The defendant contends that the assignment to Cook is not proved, except by recital. Considering, however, that the defendant does not claim under the soldiers to whom the certificates were issued, nor under the commonwealth, as far as appears, we think the deed by Coffin, as a public officer, made as long ago as 1837, and recorded in the public archives of the two states, is satisfactory evidence that the plaintiff fairly holds the title which Massachusetts had. The official act of itself has some force. It is helped by the presumption of correctness that attaches to official proceedings. The following authorities amply support this conclusion. *Stockbridge* v. *West Stockbridge*, 14 Mass. p. 261; *Marr* v. *Given*, 23 Maine, 55; *Cabot* v. *Given*, 45 Maine, 144; *Blaisdell* v. *Morse*, 75 Maine, 542; 2 Whar. Ev. § § 1313, 1315.

6. Another objection is urged against the plaintiff's right to recover. The defendant claims under a tax-title of the land from

the state. The law declares that lands shall be forfeited to the state for non-payment of taxes after the assessment has been advertised for a given period. But after that there must be proceedings by the state for the sale of the lands forfeited, the owner still having an interest in the proceeds derived from the sale, and having an after-right of redemption from the state and from the purchaser.

It is correctly admitted by the defendant that the proceedings were not valid to transfer any title from the state to the purchaser, but he contends that the plaintiff cannot recover if the forfeited title remains in the state, invoking the rule that a demandant must recover upon his own seizin and not upon that of another. It seems to be admitted by the plaintiff that the proceedings were regular enough to create a forfeiture to the state.

A demandant must recover upon the strength of his own title and not on the weakness of the tenant's. Still, a demandant may recover if he has merely a better title than the tenant. In such case he does recover upon the strength of his own title, because his title is the strongest. He may not have what is called the true title — a title good against the world — but if he has a good title as against the tenant, he may recover. A bare possession is the first degree of title, and any degree is better than no degree of title. So that the question is which party is the better entitled to the possession, the demandant or the defendant.

Properly understood, it amounts to this, that a demandant, in order to prevail, must show that he has the title — or a better or higher evidence of title than the tenant. *Tebbetts* v. *Estes*, 52 Maine, 566; *Hubbard* v. *Little*, 9 Cush. 475; *Hunt* v. *Hunt*, 3 Metc. 175.

An application of this doctrine shows that the point taken by the defendant, that the plaintiff cannot recover because the state and not the plaintiff has the title, is not tenable. In such case the state has the land, not to keep — not to use — but to sell for the taxes. The state, in view of all the statutory requirements, has but a lien upon the land. There can be no doubt that as between these parties, the defendant not gaining a title under the state, the plaintiff has the title, or a title better than the defendant's title.

7. The defendant's claim by an adverse possession of twenty years, needs but a passing word. It is not well founded — the lots are wild land and were never personally possessed by anybody. Having a deed of a township and lumbering on it, and cultivating some portions of it, will not and ought not divest an owner's title of premises situated as these are.

The plaintiff can recover for only three-fifths of the land demanded. He shows title to no more. The defendant is in possession under deeds of warranty, which is a better title to the remaining two-fifths than the plaintiff has. "*Non constat* that the other co-heirs are not as willing that the tenant should occupy their land, as that the demandant should," said PARKER, C. J., in *Dewey* v. *Brown*, 2 Pick. 387, a case in point. *Somes* v. *Skinner*, 3 Pick. 52; 1 Wash. Re. Pr. 421; *Bruce* v. *Mitchell*, 39 Maine, 390.

> *Judgment for demandant for three-fifths*
> *undivided of the premises demanded.*

DANFORTH, VIRGIN, EMERY and FOSTER, JJ., concurred.

HASKELL, J. I concur in the result reached by the opinion of the court, but I do not think that a forfeiture to the State of the lands demanded has been proved or is admitted. If the lands had been forfeited, surely the demandant's title thereto was lost. The tenant's possession is stronger than the demandant's original title, if that has been forfeited and lost. I do not think the tax proceedings have worked a forfeiture of demandant's title; because the land was sold by the State, for the non-payment of a legal state tax and an illegal county tax, and the demandant could not redeem from the one and not from the other. *Elwell* v. *Shaw*, 1 Maine, 339. It is admitted that the county tax was invalid. The notice of sale was insufficient. *Tolman* v. *Hobbs*, 68 Maine, 316. It follows, that the sale was irregular and invalid. The demandant's right to redeem did not expire until one year after the sale, R. S., 1871, c. 6, § 48; that is, a valid sale, made in compliance with law. Forfeiture cannot be said to be complete, until all right of redemption has become fore-

closed. The owner of land should not be required to pay an invalid tax, to save the estate from forfeiture, for the non-payment of a valid tax; nor should he be required to redeem from an illegal and invalid sale. *Hodgdon* v. *Burleigh*, 4 Fed. Reporter, 111. As the sale in this case was illegal, the title of the demandant did not become forfeited and lost and should prevail against the naked possession of the tenant.